36 N.J. Super. 274 (1955)
115 A.2d 581
JOSEPH J. DAVALA, PETITIONER-APPELLEE,
v.
AMERICAN BRIDGE COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 20, 1955.
Decided June 30, 1955.
*276 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. George Pellettieri argued the cause for petitioner-respondent (Miss Ruth Rabstein, attorney).
Mr. Burtis W. Horner argued the cause for respondent-appellant (Messrs. Stryker, Tams & Horner, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This appeal presents the question as to whether certain overtures for payment of workmen's compensation by an employer to an injured employee operated to invoke the limitation of counsel fee prescribed by R.S. 34:15-64, as amended by L. 1952, c. 318.
Prior to the 1952 legislation the material part of the section read:
"* * * When, however, prior to any hearing compensation has been offered or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation theretofore offered or paid. * * *"
As recast, the language now is:
"* * * When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid."
Petitioner sustained a compensable injury to his left foot on April 22, 1952. He duly received payment of temporary disability from respondent. Some time in 1953 the employer offered him for his permanent disability the sum of $750, calculated on the basis of 12 1/2% of total. He declined it. Shortly thereafter, at company expense, petitioner had his *277 foot examined by a specialist, a Dr. DePalma, in Philadelphia. The latter reported his findings to the employer. Thereupon James E. Neill, hospital attendant and employment agent for respondent, called petitioner into his office. Neill's testimony is that he had obtained a $900 company check and that he had before him the check and a workmen's compensation form No. 3 (reporting an agreement for payment and acceptable for filing with or without the employee's signature). On direct examination his testimony was:
"Q. Did you offer the Form 3 and the check? A. I called Mr. Davala into the office, sitting opposite me there, and I said: `Joe, the company, or Dr. DePalma, rather, seems to concur in the opinion of the company advisers that you have a 15 per cent disability of your foot and I have the Forms 3 here and a check for $900.' And Joe says: `Nothing doing.' Turned on his heel and walked out.
Q. Did you actually, physically offer him  A. I held them up. I didn't force them in his hand or anything."
On cross-examination he said he did not explain the form. On redirect examination he added that he said to petitioner: "If it is agreeable, I have the check and the forms here."
Petitioner's testimony was that Neill merely asked him whether he would accept $900 and that his response was in the negative. He denied he was offered a check.
A formal petition in compensation was filed April 6, 1954. An answer was filed May 24, 1954 reciting:
"The respondent is willing to compensate the petitioner for such permanent disability, if any, as appropriate physical examinations may reveal.
The respondent has offered and tendered in good faith to the petitioner permanent disability in the amount of 15% of the left foot. This offer has been refused by the petitioner. The respondent by this answer hereby renews such offer and tender."
The matter came on for hearing in the Division January 14, 1955. It resulted in an award based upon a 20% permanent disability of the foot. Counsel fee was granted petitioner's attorney based upon the entire award. The respondent's contention that the basis was required to be limited to the amount in excess of the 15% offered was *278 rejected by the Deputy Director on the ground that there was no showing of an actual "proffer" of the money, but at most only an exhibition of the check; also that the tender was impaired by the reference to the form No. 3. The conclusion was that good faith was lacking. On appeal of the counsel fee only, the Mercer County Court affirmed, finding there was not a bona fide offer.
It is apparent that the Legislature intended to require something substantially more from the employer, as a condition for limitation of counsel fee, when the act was amended in 1952, than the mere "offer" of compensation prior to hearing previously sufficient for that purpose. A recital of an offer in a filed answer previously sufficed. See Haberberger v. Myer, 4 N.J. 116, 124 (1950). It was, moreover, said in that case:
"Under R.S. 34:15-64, an employer may refrain from making an offer of settlement until immediately `prior to any hearing' and thus diminish or entirely defeat the award of fees to a petitioner's attorney, despite the rendition of services in preparation of his client's case for hearing. The making of the policy is a function of the legislature."
The public policy in the respect referred to was altered by the added requirement, as to time of overture, that it be reasonable. As to its substance, there was added to the requisite of an offer, a tender in good faith. Precedents cited by respondent antedating 1952 are no longer authoritative.
The last clause of the aforequoted sentence in R.S. 34:15-64, as amended, creates a surface ambiguity as to whether a "tender in good faith" is merely an added alternative to an offer or a payment. Recourse to the legislative history of the amendment dissolves the ambiguity. As originally introduced in the General Assembly, and through the Third Official Copy Reprint, in which form Assembly Bill No. 280 was first passed by both houses, the amendatory sentence read:
"When, however, at a reasonable time, prior to any hearing compensation has been tenderd in good faith or paid, the reasonable allowance etc. * * *"
*279 There was no reference to an offer. In this form the bill was conditionally vetoed by the Governor. He said:
"These changes are desirable but the way they are stated in the bill they would appear to require a tender or payment of compensation which might not in fact be due for some time. Obviously, there cannot be a tender of an amount payable under the workmen's compensation schedule over a stated number of weeks in the future."
He consequently returned the bill and recommended, inter alia, that amendments be made to meet the stated objection. The bill as repassed and approved was in the identical language suggested in the veto message. It is fairly inferable that in adopting the Governor's suggestions the legislative intention was the same as that expressed in the message. It is thus clear that where the amount to be paid is for a permanent disability in a lump sum, as here, it being then all "due," the legislative intent is that the amount be "tendered in good faith," not merely offered.
The term, "tender," may have varying shades of contextual significance, in statute as well as at common law. See Robins v. Mack International, etc., Corp., 113 N.J.L. 377, 383 (E. & A. 1934). In the present application, having in mind the obvious purpose of the 1952 amendment to afford greater protection to attorneys representing compensation claimants who may have invested substantial time and effort in a matter prior to the making of an offer by a respondent (see 2 Larson, Workmen's Compensation Law (1952), § 83.17, pp. 350, 351), the requirement of "tender in good faith" suggests to us an intent for some degree of objectivity in the making of the proposal; something which does not leave the attorney to the mercy of later interpretations of mere conversations, as in the present case with reference to the interview between Neill and petitioner. For the same basic reason, respondent's contention that a strict proffer of the funds was not necessary here because petitioner's dissatisfaction with the amount of the offer showed tender would have been futile, is not apt. Where the statute applies, *280 both employee and employer are relieved pro tanto of liability to the attorney, Haberberger v. Myer, supra, and his compensation should not be snuffed out or reduced, short of literal compliance by the employer with the statute, on the basis of the nature of the employee's reaction to an offer.
The incorporation of the prior "offers," not themselves sufficient, in respondent's answer to the petition of claim, will not avail it. This constituted but another offer, not the requisite tender. Without suggesting that mailing a check is necessarily the only way of making a "tender in good faith" upon the filing of a claim petition, one wonders why the respondent did not avail itself of that simple and unequivocal method of perfecting its asserted position in the present case.
The Division and the County Court concluded that the colloquy between petitioner and respondent's representative did not amount to a tender in good faith. We are not satisfied that their concurring determinations are insupportable on the evidence, Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950), nor, in view of our impression of the intent and effect of the 1952 amendment, without legal basis. Our conclusion, however, is not based to any extent upon the employer's showing the form No. 3 to the employee. It had the right and duty to attempt to secure the employee's signature as part of the transaction. R.S. 34:15-97; 34:15-98. We observe that the employer must be careful not to convey the impression to the employee, when tendering payment, that the signing of the form is mandatory or that it concludes the employee against recovering a larger award. See Nagy v. Ford Motor Co., 6 N.J. 341 (1951). The tender must be unconditional. Cf. Robins v. Mack International, etc., Corp., 107 N.J.L. 285, 287 (E. & A. 1931).
Affirmed.