70 N.J. Super. 422 (1961)
175 A.2d 665
FRANK VERRA, PETITIONER-RESPONDENT,
v.
THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1961.
Decided November 21, 1961.
*423 Before Judges GAULKIN, KILKENNY and HERBERT.
Mr. Lawrence E. Florio argued the cause for the appellant (Mr. Robert F. McAlevy, Jr., attorney).
Mr. Patrick F. McDevitt argued the cause for the respondent (Messrs. Reich & McDevitt, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
This is a workmen's compensation case. Verra, a Hoboken fireman, claimed that he had been injured during a fire on July 30, 1958. Although Hoboken admitted that he was disabled and unable to work, it denied that he had been injured in the course of his employment. On August 21, 1958 Verra signed the following agreement:
"I, FRANK VERRA, a Fireman of the Fire Department, Department of Public Safety of the City of Hoboken, hereby stipulate and *424 agree that in consideration of wages paid to me in excess of the rate of compensation I would be entitled to under the Workmen's Compensation Act of the State of New Jersey, any wages paid to me by the City of Hoboken in excess of the rate of compensation that I would be entitled to under the Workmen's Compensation Act of the State of New Jersey, during the period or periods of illness allegedly resulting from a compensable accidental injury suffered by me on July 30, 1958, will not be considered by me as a gift from or a voluntary payment made by the said City of Hoboken, and the total of said excess of wages paid to me as aforesaid will be credited to the said City of Hoboken against any amount that may be due me for permanent disability under the Workmen's Compensation Act of the State of New Jersey as the result of said accident.
FRANK VERRA"
Verra did not return to work until April 1, 1959, a period of 35 weeks after July 30. Pursuant to the quoted agreement, Hoboken paid him his salary of $100 per week during that time. Hoboken says it did so under the authority of R.S. 40:11-9, which reads as follows:
"The governing body of every county or municipality may grant a leave of absence with pay to any member of its police or fire department who shall become injured, ill or disabled from any cause so as to be physically unfit for duty during the period of such disability and physical unfitness for duty * * *
No such leave of absence with pay shall exceed one year commencing from the date of such injury, illness or disability."
In short, the agreement between the parties was that Verra was to receive his salary during his disability, not exceeding one year, but, if Verra established his right to compensation, the "excess of wages" paid was to be credited against "any amount" adjudged due him for permanent disability.
When his stipulation was signed Verra had not yet filed a petition for compensation. He filed it in March 1959, shortly before he returned to work. Hoboken filed an answer contesting his right to compensation. On June 22, 1960 the deputy director adjudged that petitioner had been injured in the course of his employment; that he had been temporarily disabled for a period of 35 weeks (the judgment *425 erroneously says "From 7-30-58 to 8-1-59") for which he had been paid at the rate of $40 per week, via the payments of $100 per week received during that period; and that he was entitled to "40% of total permanent partial disability or 220 weeks at $35 per week amounting to $7,700.00." The deputy also held:
"He was * * * paid his full salary ($100.00 per week) [from July 29th, 1958 to April 1st, 1959] a total of $3,500.00.
The respondent and petitioner agreed that ordinarily petitioner would only be entitled to $1,400.00 in maximum compensation benefits for this period of time. The respondent seeks a credit of $2,100.00 pursuant to a stipulation dated August 21st, 1958 * * *
This stipulation, in sum and substance, signed by the petitioner, purports to be a waiver on petitioner's part of any monetary portion of permanent disability to offset the voluntary overpayment on City's part for temporary disability.

* * * * * * * *
It thus seems clear that despite the stipulation entered into by petitioner with the City, such an agreement would be violative of the spirit and character of our Act and work an undue hardship on the petitioner not in keeping with the rights granted to him by the beneficial Legislature [sic]. Accordingly I shall disallow any claim on the part of the City for the said $2,100.00 * * *."
Hoboken appealed to the County Court from only that portion of the judgment which denied the $2,100 credit. The County Court affirmed, and now Hoboken prosecutes this further appeal.
R.S. 34:15-29 provides that workmen's compensation "claims or payments due * * * shall not be assignable, and shall be exempt from all claims of creditors and from levy, execution or attachment." The language "claims or payments due" indicates that the word "claims" means payments to fall due in the future, as distinguished from payments already due. Had the stipulation here called for a pro tanto assignment of a future award it obviously would have been contrary to the statute, and in Williams v. Newark Dept. of Welfare, 43 N.J. Super. 473 (Cty. Ct. 1957), it was held that the Division had "no jurisdiction to declare an award `paid' because the employee owes the *426 employer a sum, liquidated or unliquidated, upon an independent claim * * *," and no jurisdiction to allow a counterclaim, recoupment or set-off.
However, Hoboken argues that here there was no assignment, set-off, or any other device forbidden by law, but merely an arrangement for prepayment in the event that Verra succeeded in establishing his right to compensation. If so, argues Verra, it is an illegal commutation of compensation, because made without prior approval of the Division, as required by N.J.S.A. 34:15-25, citing Renshaw v. U.S. Pipe and Foundry Co., 30 N.J. 458 (1959); Di Meglio v. Slonk Construction Co., 121 N.J.L. 366 (Sup. Ct. 1938), affirmed 122 N.J.L. 379 (E. & A. 1939), and Williams v. Newark Dept. of Welfare, supra.
We agree that the Division properly held that it had no power to give the credit claimed. It may be that Hoboken may obtain a judgment for the $2,100 against Verra in an action of law, but it may not recover said sum in the manner here attempted. The allowance of the $2,100 credit would wipe out Verra's compensation for the first 60 weeks. Even if Hoboken consented that it be the last 60 weeks, it would still be a commutation forbidden by N.J.S.A. 34:15-25.
The essence of the scheme of the Workmen's Compensation Act is "to provide weekly compensation, in lieu of wages, to the injured employee during the period of his disability * * * commutation of the payments is out of the normal course. * * *" King v. Western Electric Co., 122 N.J.L. 442 (Sup. Ct. 1939). N.J.S.A. 34:15-25 provides (so far as is here material) that commutation may be allowed only
"* * * if it appears that such commutation will be for the best interest of the employee * * * or that it will avoid undue expense or undue hardship to either party * * *.
Unless so approved, no compensation payments shall be commuted.
In determining whether commutation will be for the best interest of the employee * * * or that it will avoid undue expense or undue hardship to either party, the bureau and the County Court *427 will regard the intention of this chapter that compensation payments are in lieu of wages, and are to be received by the injured employee or his dependents in the same manner in which wages are ordinarily paid. Commutation is to be allowed only when it clearly appears that an unusual circumstance warrants a departure from the normal manner of payment and not to enable the injured employee or dependents of a deceased employee to satisfy a debt, or to make payment to physicians, lawyers or others." (Emphasis ours)
There are similar statutes in many states. In Schneider, Workmen's Compensation, the author has collected statements from various jurisdictions which express the purpose of such statutes. He says (vol. 8, § 1790, pp. 351-353):
"It has been the declared purpose of compensation that it should be paid in lieu of wages and that it shall be as wages, that is periodically. Any deviation from this method of payment has been said to be contrary to the declared purpose of the acts and must be done only as provided by law. `It is a matter of common knowledge that one paid a large sum of money in a lump sum instead of small periodical payments is more prone to dissipate it, and the probability that the money would be expended in the manner intended, is small, if nonexistent.'
* * * `The purpose of periodical payments is to give the employee an income payable as his wages were paid and to preclude any possibility of an imprudent employee or dependent wasting the means provided for his support and thereby becoming a charge upon society.' * * * `The whole idea of periodical payments is to give the workman an income payable as his wages are paid * * * this is the plan of the act, and it is only in exceptional cases that the court should approve a commutation.'"
In Di Meglio v. Slonk Construction Co., supra, the employer had paid the employee, prior to the hearing in the Bureau, temporary disability for 16 weeks and permanent disability for 25 weeks (5% of total) on the basis of a $25 weekly wage. At the hearing the Bureau allowed 15% of total, but adjudged that the employee's wage was only $20 per week. The employer's demand for credit for the overpayment was rejected, the court saying (121 N.J.L., at p. 370):
"In the case of disability, both temporary and permanent, the statute prescribes weekly payments of compensation at a fixed rate, *428 i.e., a certain percentage of the weekly wage. R.S. 1937, 34:15-12 et seq. This is of the essence of the statutory scheme.
Compensation for `all classes of injuries shall run consecutively, and not concurrently,' except as otherwise specifically provided. Section 34:15-16. Such payments `are in lieu of wages, and are to be received by the injured employee or his dependents in the same manner in which wages are ordinarily paid'; * * * The parties are disabled from contracting out of the statute, so much so as to be deprived of the ordinary right of compromise of a disputed claim. P. Bronstein & Co. v. Hoffman, 117 N.J.L. 500.
In view of the peremptory requirements of the statute, and the underlying policy, it does not matter that the overpayments were the result of error, and were not made from a spirit of benevolence. The apposite principle was applied by our court of last resort in an analogous case: `The proceeding is a statutory one, and there is no provision in the statute for a return of any money which may have been paid, either voluntarily or involuntarily, to an injured workman. Statutory proceedings must be closely followed. A statute cannot be construed to give to a court powers other than those specifically mentioned in the act.' Levins v. Fulton Specialty Co., 99 N.J.L. 280. See, also, Blackford v. Green, 87 Id. 359; affirmed 89 N.J.L. 357; Barbour Flax Spinning Co. v. Hagerty, 85 N.J.L. 407. The failure of the legislature since to exercise its amendatory power is, of course, significant of its acquiescence in that interpretation."
In Renshaw v. U.S. Pipe & Foundry Co., supra, the Supreme Court said (30 N.J., at p. 465; emphasis ours):
"The employer or his insurance carrier may not secure reimbursement or offset of compensation paid except out of the proceeds of an action brought by the employee or his dependents against a third party liable for the injury or death (R.S. 34:15-40, as amended; United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157 (1950); Williams v. Department of Public Welfare, City of Newark, 43 N.J. Super. 473 (Cty. Ct. 1957)). Nor may an employer secure credit beyond the compensation rate for payments made by way of wages or gratuitously during a period when the employee is entitled to benefits under the act even when the latter agreed to such additional credit. Blackford v. Green, 87 N.J.L. 359 (Sup. Ct. 1915), affirmed on opinion below, 89 N.J.L. 357 (E. & A. 1916); cf. Beach Construction Co. v. Sullivan, 13 N.J. Misc. 582 (Sup. Ct. 1935)."
In the Renshaw case the employer did receive credit for payments made under its pension plan, but an examination of the record in that case shows the payments were only "$27.50 per month from April 1, 1955," far less than the compensation due.
*429 See also 11 Schneider, Workmen's Compensation, § 2319. Cf. Crane Co. v. Loome, 25 Ill. App.2d 61, 165 N.E.2d 728 (App. Ct. 1960); Olney Seed Co. v. Industrial Commission, 403 Ill. 587, 88 N.E.2d 24 (Sup. Ct. 1949); Martin v. State, 25 So.2d 251 (La. Ct. App. 1946); International Coal & Mining Co. v. Industrial Commission, 293 Ill. 524, 127 N.E. 703 (Sup. Ct. 1920).
The judgment is affirmed.