AETNA LIFE AND CASUALTY, PLAINTIFF, v. ESTATE OF DAVID ENGARD, JOSEPH D. KAPLAN AND SON, NEIL M. REDNOR, MASSEY-FERGUSON, INC., ABC CORPORATION (A FICTITIOUS DEFENDANT), JOHN DOE (A FICTITIOUS DEFENDANT) AND XYZ CORPORATION (A FICTITIOUS DEFENDANT), DEFENDANTS.

Superior Court of New Jersey
Law Division Morris County

October 24, 1986.

*Robert C. Spiess* for plaintiff (*Piro, Zinna, Cifelli & Paris,* attorneys).

*Jerem M. Gordon,* for defendants Kaplan & Son and Rednor (*Joseph D. Kaplan & Son,* attorneys; *Lionel A. Kaplan* on the brief).

*Philip W. Crawford* for defendant Massey-Ferguson, Inc. (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys).

## OPINION

MacKENZIE, J.S.C.

On a motion for summary judgment, this Court is presented with a novel question of statutory construction involving the Workers' Compensation Act, *N.J.S.A.* 34:15–1, *et seq.* The issue is whether a workers' compensation insurance carrier that paid a lump-sum settlement pursuant to *N.J.S.A.* 34:15–20 should be reimbursed pursuant to *N.J.S.A.* 34:15–40 from the proceeds of a third-party tort recovery. Consideration of the interplay between these statutory sections leads the Court to conclude that a carrier cannot recoup any part of a settlement which it previously paid under *N.J.S.A.* 34:15–20. This opinion is intended to supplement the reasons given in open court.

The salient facts are not disputed. On August 18, 1981, David Engard sustained fatal injuries while operating a tractor in the course of his employment with George Brauninger ("Brauninger"). Kathleen Engard, although not married to the decedent, had cohabited with him as his common-law wife in New Hope, Pennsylvania.[1] Ms. Engard retained the law firm of Joseph D. Kaplan & Sons, P.C. ("Kaplan") to bring a workers' compensation claim against Brauninger, as well as a third-party tort action against Massey-Ferguson, Inc. ("Massey"), which manufactured the tractor involved in the incident.

Through counsel, Ms. Engard filed a dependency claim petition in the Division of Workers' Compensation. Aetna Life & Casualty ("Aetna"), as workers' compensation carrier for Brauninger, filed an answer specifically denying Ms. Engard's dependency.

Neil M. Rednor, Esq. ("Rednor"), a member of the Kaplan firm, represented Ms. Engard on the dependency petition, which was heard on July 14, 1982 before Compensation Judge Stanley E. Rutkowski. Rather than litigate the dependency issue, the parties disposed of the petition pursuant to *N.J.S.A.* 34:15-20, by entering into a lump-sum settlement of $5,000. After finding the settlement to be fair and just, Judge Rutkowski entered an order approving it.[2]

In June 1985, the tort action against Massey was settled by Ms. Engard for $64,000 and the proceeds of that settlement

---

[1]Pennsylvania recognizes common-law marriage. *See* 48 *P.S.* § 1–23; *Manfredi Estate,* 399 *Pa.* 285, 159 *A.2d* 697 (1960); *In re Estate of Rees,* 331 *Pa.Super.* 225, 480 *A.2d* 327 (1984).

[2]Ms. Engard applied for dependency benefits pursuant to the New Jersey Workers' Compensation Act since the accident occurred on Brauninger's premises in Lambertville, New Jersey. In light of Ms. Engard's asserted common-law marriage, her status as a "dependent" within the meaning of *N.J.S.A.* 34:15–13 was clearly at issue. Ms. Engard's questionable entitlement to benefits was noted by Judge Rutkowski on the order approving settlement, when he wrote, "There is a serious question of dependency as it may relate to common-law marriage."

were paid to the Estate of David Engard ("Estate").[3] By letter dated May 10, 1982, Aetna had notified Kaplan that it had provided benefits under the compensation law and would look to the firm, as counsel for the Estate, for reimbursement on its lien claim. A second letter from Aetna on September 10, 1982 itemized its expenditures as $5,000 based on the settlement paid to Ms. Engard, and $7,468.82 based on medical benefits paid on behalf of the Estate.

Acting on behalf of the Estate, Kaplan issued a check to Aetna on July 18, 1985 for $4,845.88 in purported satisfaction of Aetna's asserted lien. The amount tendered represented reimbursement for Aetna's prior medical expenditures, after crediting expenses of suit and the maximum 33⅓ attorney's fee provided for in *N.J.S.A.* 34:15–40(e). Kaplan did not tender reimbursement for the dependency settlement, thus prompting the present lawsuit.

Kaplan and Rednor dispute Aetna's entitlement to recovery of the $5,000 dependency settlement. They bring this motion for summary judgment seeking dismissal of Aetna's Complaint.[4] In light of the absence of any genuine dispute as to the material facts, the case is ripe for summary determination as a matter of law. *R.* 4:46–2.

Several challenging questions are presented for resolution: Does the Superior Court of New Jersey, Law Division, have jurisdiction to determine the validity and extent of Aetna's lien;

---

[3]The Estate is named as a party defendant in this action. However, it appears that the Estate was never served, nor did co-defendants Kaplan and Rednor file an answer on its behalf.

[4]Massey submitted a letter brief in partial opposition. It argued that if the Court determined a lien existed, then the responsibility for its payment should fall upon the other defendants. Massey disclaimed any such responsibility, contending that it never received a notice of lien from Aetna pursuant to *N.J.S.A.* 34:15–40(d) and that it already paid the third-party settlement to the Estate. However, in view of the Court's focus upon the underlying statutory right of reimbursement and the Court's decision respecting its limited scope in the present case, the issues raised by Massey were rendered moot.

do Kaplan and Rednor, as counsel for the Estate, owe a duty of reimbursement to Aetna; and, if a duty of reimbursement is deemed to exist, does it extend to the dependency settlement reached under *N.J.S.A.* 34:15–20?

*N.J.S.A.* 34:15–49, in pertinent part, provides: "The Division of Workers' Compensation shall have the exclusive original jurisdiction of all claims for workers' compensation benefits under this chapter." In *Handleman v. Marwen Stores Corp.*, 53 *N.J.* 404, 412 (1969), the Supreme Court defined the statutory jurisdiction provision as follows:

> We interpret "exclusive original jurisdiction" as used in *N.J.S.A.* 34:15–49 to mean only that workmen's compensation cases must arise *in the first instance* in the Workmen's Compensation Division. The phrase serves the administrative function of channeling all such cases to the agency specially created to hear them, and ordinarily as complete a record as possible should be made before that tribunal. [Emphasis in original.]

■ Aetna contends that this Court should assume jurisdiction over the lien issue. On the other hand, Kaplan and Rednor contend that *New Jersey Mfrs. Ins. Co. v. Blau*, 194 *N.J.Super.* 27 (App.Div.1984), should induce the Court to decline jurisdiction and permit the Compensation Court to determine the efficacy of the lien. In *Blau*, a workers' compensation carrier instituted suit in the Law Division to recover compensation benefits paid to a worker's widow who had remarried and thus allegedly was no longer entitled to receive benefits. The defendant, in turn, counterclaimed for an order compelling the carrier to resume payment of benefits pursuant to an earlier order entered in the Division of Workers' Compensation approving settlement. The court held that the exclusive, original jurisdiction of the Division over all claims for workers' compensation benefits included a carrier's claim to recover such benefits when paid under the circumstances of the case. Since Aetna in this action also seeks a "recovery" of benefits paid, Kaplan and Rednor assert that the action is not properly cognizable in the Law Division. Their argument is, however, unpersuasive. The Court finds that *Blau* is distinguishable, both factually and legally.

Critical to the Court's decision in *Blau* was the fact that the claims of both parties depended upon whether defendant had lost her status as a dependent, an issue within the exclusive, original jurisdiction of the Division. Moreover, the order that had emanated from the Division was the centerpiece of the litigation. In contrast, the rights and duties of the parties in the present case are based solely on statutory construction of provisions of the Workers' Compensation Act. This Court can engage in this most basic of judicial functions without offending the mandate of *N.J.S.A.* 34:15–49.

Before this Court is not a claim for workers' compensation benefits, but a carrier's asserted right of reimbursement for benefits already disputed, determined and disbursed. Nor is this Court called upon to decide issues regarding liability, causal relationship, or dependency, which would otherwise lie within the province of the Workers' Compensation Division. Aetna's present cause of action stems from matters that did "arise in the first instance" in the Division and were determined there. The policy of efficient administration of such claims has already been served. The issues raised in this action are secondary and derivative. Accordingly, the Superior Court, Law Division has the jurisdiction to evaluate the extent of Aetna's lien.

The evaluation begins with *N.J.S.A.* 34:15–40 ("section 40"). The history of section 40 was thoroughly traced by the court in *Danesi v. American Mfrs. Mut. Ins. Co.*, 189 *N.J.Super.* 160, 162–163 (App.Div.1983), certif. den. 94 *N.J.* 544 (1983). The statute preserves an action by the employee or his dependents against a third party liable to the employee for an injury or death. It also gives the employer or his insurance carrier a statutory right of reimbursement for workers' compensation paid, and provides a lien, when perfected, to secure reimbursement. *Id.* at 163.

The pertinent provisions of section 40 read as follows:

In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided....

(b) If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined....

(d) If at any time prior to the payment by the third person or his insurance carrier to the injured employee or his dependents, the employer or his insurance carrier shall serve notice, as hereinafter provided, upon such third person or his insurance carrier that compensation has been applied for by the injured employee or his dependents it shall thereupon become the duty of such third person or his insurance carrier, before making any payment to the injured employee or his dependents, to inquire from such employer or his insurance carrier the amount of medical expenses incurred and compensation theretofore paid to the injured employee or to his dependents. Where such notice shall have been served, it shall further become the duty of such third person or his insurance carrier, before making any payment as aforesaid, to inquire from such injured employee or his dependents the amount of the expenses of suit and attorney's fee, or either of them in the action or settlement of the claim against such third person or his insurance carrier. Thereafter, out of that part of any amount about to be paid in release or in judgment by such third person or his insurance carrier on account of his or its liability to the injured employee or his dependents, the employer or his insurance carrier shall be entitled to receive from such third person or his insurance carrier so much thereof as may be due the employer or insurance carrier pursuant to subparagraph (b) or (c) of this section. Such sum shall be deducted by such third person or his insurance carrier from the sum to be paid in release or in judgment to the injured employee or his dependents and shall be paid by such third person or his insurance carrier to the employer or his insurance carrier. Service of notice, hereinbefore required to be made by the employer or his insurance carrier upon such third person or his insurance carrier, shall be by registered mail, return receipt and in cases other than an individual shall be mailed to the registered office of such other third person or his insurance carrier.

██ Kaplan and Rednor acknowledge Aetna's statutory right of reimbursement pursuant to subsection (b). However, they rely on a literal reading of subsection (d) to support their position that the duty to reimburse Aetna falls upon the third-

party tortfeasor or its insurance carrier.[5] This position not only misconstrues subsection (d) and its relation to other subsections, but also disregards longstanding judicial interpretation of section 40.

Although subsection (d) makes repeated reference to payment from the "third person or his insurance carrier", one must recognize its context. That subsection outlines the steps necessary to perfect a lien against a third-party recovery. *Danesi v. American Mfrs. Mut. Ins. Co., supra,* 189 *N.J.Super.* at 165. It also enables the employer or his insurance carrier to recover its lien directly from the third party, out of the amount "to be paid" in release or judgment to the employee or his dependents. Given the present factual setting in which Massey has already paid its settlement to the Estate, Kaplan and Rednor cannot use subsection (d) as a means to avoid their own reimbursement obligation.

Counsels' duty of reimbursement, as attorneys for the Estate, is expressed in *N.J.S.A.* 34:15–40(b). As stated by the Appellate Division in *Danesi, supra,* at 165:

> By application of established principles of statutory construction to *N.J.S.A.* 34:15–40, the legislative scheme which emerges is a plan to permit an injured worker to collect worker's compensation benefits and pursue his common law remedy against the third-party tortfeasor. Subsection (b), however, obligates the employee or his dependents to reimburse the employer or its worker's compensation insurance carrier when the employee or his dependents recover from the third-party tortfeasor or his insurance carrier.

Moreover, as demonstrated by the correspondence between the parties, Kaplan and Rednor were well aware of Aetna's prior payments. In fact, they were put on notice of Aetna's asserted lien almost three years before ultimately negotiating a

---

[5]Kaplan and Rednor do not contend that the possible failure of Aetna to perfect its lien against the third-party recovery extinguishes its right of reimbursement. The argument would have been unsuccessful in light of the clear holding in *Danesi, supra,* that perfection of the lien is not a prerequisite to the insurer's statutory right of reimbursement. The lien is distinct from the obligation it secures. *Id.* 189 *N.J.Super.* at 166.

settlement with Massey. The equities, then, support the imposition of a duty of reimbursement upon counsel.

█ The scope of that duty must next be examined. *N.J.S.A.* 34:15–40(b) provides that the employer or his insurance carrier is entitled to reimbursement "for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents." Unquestionably, Aetna is entitled to recapture the medical expenses it incurred on behalf of the Estate. However, what is not as definitive is whether Aetna can recover the $5,000 settlement it paid to Ms. Engard pursuant to *N.J.S.A.* 34:15–20 ("section 20").

In accordance with section 20, a judge of compensation may approve a lump-sum settlement of a controversy between employer and employee, or the dependents of the employee, involving questions of jurisdiction, liability, causal relationship or dependency. The statute provides, "Such settlement, when so approved, notwithstanding any other provisions of this chapter, shall have the force and effect of a dismissal of the claim petition and shall be final and conclusive upon the employee and the employee's dependents, and shall be a complete surrender of any right to compensation or other benefits arising out of such claim under the statute." Significantly, the last sentence reads, "Any payments made under this section shall be recognized as payments of workers' compensation benefits for insurance rating purposes only."

Despite the plain language of section 20, Aetna argues that section 40 compels its recovery of the settlement proceeds. Aetna maintains that the legislative intent, as expressed in section 40, is to assure that an injured employee or his dependents do not retain both compensation benefits and the fruits of the common-law damage action against the third-party tortfeasor. If it cannot recover its $5,000 payment, Aetna argues, then the Estate is unjustly enriched, contrary to the apparent legislative scheme.

The Court is cognizant of the policies embodied in section 40. However, that section cannot be viewed in isolation; it must be construed in its interplay with section 20. Section 40 provides for reimbursement of "compensation payments". Yet payments made under section 20 are recognized as compensation payments for insurance purposes only. The two sections are not inconsistent and can be harmonized.

Section 20 was enacted in 1979, well after section 40, which in its present amended form became law in 1956. As stated by our Supreme Court in *State v. Federanko*, 26 *N.J.* 119, 129 (1958), "The Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a *useful and consistent purpose*." [Emphasis supplied.] *See also, Zon. Bd. of Adj. v. Service Elec. Cable T.V.*, 198 *N.J.Super.* 370 (App.Div.1985); *Barringer v. Miele*, 6 *N.J.* 139 (1951); *Eckert v. New Jersey State Highway Department*, 1 *N.J.* 474 (1949). It may, therefore, be concluded that the Legislature, in amending section 20, considered the history and terms of section 40, as well as the case law interpreting the policies underlying that section. In enacting section 20, it is notable that the Legislature did not also amend *N.J.S.A.* 34:15–40(b). The scope of the duty of reimbursement remained limited to "medical expenses" and "compensation payments". Where, as here, the legislative mandate is clearly expressed, a court should construe the statutes to carry out that purpose. *Cf. Magro v. City of Vineland*, 148 *N.J.Super.* 34, 39 (App.Div.1977); *State v. Fearick*, 69 *N.J.* 32, 37–38 (1976); *Eckert v. New Jersey State Highway Department*, 1 *N.J.* at 479–480.

The Court's function is to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts. *State v. Butler*, 89 *N.J.* 220, 226 (1982). Inasmuch as the final sentence of section 20 is clear and unambiguous, it is not open to construction or interpretation beyond that which may be gleaned from its express language.

*Watt v. Mayor and Council of Borough of Franklin,* 21 *N.J.* 274, 277 (1956).

 The evident wording of the final sentence of section 20 reveals a specific legislative intent to treat payments made under that section as a special category of payments, *i.e.,* they are recognized as payments of workers' compensation benefits for insurance rating purposes only. Payments pursuant to a section 20 settlement are thus exempt from a carrier's general lien created in section 40.

The Court is satisfied that this statutory construction effectuates the legislative intent which shines through the remainder of section 20. The statute expressly articulates a policy of finality and conclusiveness, "notwithstanding any other provisions of this chapter." From the claimant's perspective, a section 20 settlement means dismissal of the claim petition and a surrender of any rights to future compensation benefits. From the perspective of the employer or his insurance carrier, all payments are deemed to be compensation payments for insurance purposes only. In holding that a carrier cannot recoup any such payments, the Court believes it is furthering the principle of finality espoused in the statute.

The holding is not unfair to Aetna. Despite the existence of a genuine issue regarding Ms. Engard's dependency status, Aetna retreated from its initial position denying dependency and opted to forego litigation on the merits. Aware of the explicit terms of section 20, Aetna elected to enter into a lump-sum settlement. In doing so, Aetna did not reserve on the record any right it may have had to claim a lien as to the dependency benefits. Moreover, Judge Rutkowski's remarks at the hearing on July 14, 1982 and the order approving settlement recognize the nature of the settlement.[6] Nor has Aetna argued

---

[6] Judge Rutkowski specifically asked Ms. Engard, "Now, any payment made to you is recognized under the law only as payment of benefits for insurance rating purposes only. ... Do you understand that?" (transcript, page 7).

that at the time of negotiating and entering into the settlement it was unaware of any potential third-party action.

Accordingly, Kaplan and Rednor's motion for summary judgment is granted. Their tendered payment of $4,845.88 discharged the obligation of the Estate to reimburse Aetna for medical expenses only.

The order approving settlement, dated July 14, 1982, contains a printed paragraph, the final sentence of which states, "The payment hereunder shall be recognized as payments of workers' compensation benefits for insurance rating purposes only."